Revised August 26, 1998

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

———————————————

No. 97-20890

———————————————

DANIEL LEE CORWIN,

Petitioner-Appellant,

VERSUS

GARY L. JOHNSON, Director, Texas Department of Criminal Justice,
Institutional Division,

Respondent-Appellee.

———————————————————————————————

Appeal from the United States District Court
for the Southern District of Texas

———————————————————————————————

August 7, 1998

Before KING, HIGGINBOTHAM, and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Daniel Lee Corwin, a Texas death row inmate, seeks a certificate of appealability ("COA") to review the district court's denial of his application for writ of habeas corpus. For the reasons that follow, we deny Corwin's application for a COA.

**I.**

**A. Facts & Procedural History**

Corwin was sentenced to death following his state court conviction for murdering more than one person pursuant to the same scheme or course of conduct. TEX. PENAL CODE ANN. § 19.03(a)(7)(B)

(West 1994).[1]  His conviction and sentence were affirmed by the Texas Court of Criminal Appeals.  Corwin v. State, 870 S.W.2d 23 (Tex. Crim. App. 1993) (en banc).  The Texas Court of Criminal Appeals summarized the facts supporting Corwin's conviction and sentence, and Corwin has acknowledged that this summary of the facts is accurate.

> Over the course of nine months in 1987 [Corwin] abducted, sexually assaulted, and killed two women, and then attempted to abduct, and when he could not, killed, a third.  In July of 1987 he abducted twenty-six year old Debra Ewing from the Huntsville Vision Center, where she worked.  He apparently drove her to a remote area of Montgomery County, raped her in the front seat of his truck, and then strangled her with a ligature of some sort and stabbed her twice in the chest.  In February of the same year [Corwin] had abducted a seventy-two year old Alice Martin, who was taking her daily walk along a farm to market road in Madison County.  He apparently drove her to a more remote area in Robertson County, raped her in the front seat of his truck, and then strangled her with a ligature and stabbed her four times in the back.  On Halloween evening of 1987 [Corwin] tried to force thirty-six year old Mary Risinger into his truck at a car wash in Huntsville.  When she put up a struggle, he stabbed her in the throat, severing every major blood vessel in her neck.

> At the punishment phase it was shown [Corwin] had committed similar offenses both before and after the three offenses in 1987.  In 1975 [Corwin] abducted a high school classmate and drove her in her own car to a gravel pit, where he raped her.  He then forced her out of the car, slashed her throat, stabbed her in the heart, and left her for dead.  Miraculously, she lived.  [Corwin] was assessed a forty year prison sentence for this offense.  In October of 1988 [Corwin] abducted a Texas A & M co-ed in her own vehicle and drove her to a park.  There he sexually assaulted her, then tied her arms around a tree and slashed and stabbed her throat.  She

---

[1]     When Corwin was convicted, this section was codified at § 19.03(a)(6)(B).  For purposes of clarity, we will refer to the new codification--§ 19.03(a)(7)(B)--as the provision under which he was convicted.

2

also survived. [Corwin] was serving time for this last offense during the instant prosecution.

Id. at 27.

Corwin filed an application for writ of habeas corpus in the state trial court, in which he made several claims. The trial court addressed these claims, made findings of fact and conclusions of law, and recommended that Corwin be denied habeas relief. Ex parte Daniel Lee Corwin, No. 89-05-00404-CR-(1) (Tex. D. Ct. Montgomery Cty. Mar. 10, 1997).

The Texas Court of Criminal Appeals' opinion issued in April of 1997, which summarily adopted the trial court's findings and conclusions. Ex parte Daniel L. Corwin, No. 33570-01 (Tex. Crim. App. Apr. 23, 1997) (en banc). The Texas Court of Criminal Appeals stated that "[t]he trial court's findings of fact and conclusions of law are supported by the record and upon such basis the relief sought is denied." Id.

In August 1997, Corwin filed an application for federal habeas corpus relief pursuant to 28 U.S.C.A. § 2254 (Supp. 1998). Corwin raised the same issues in his federal habeas petition that he raised in his state petition. The Respondent answered Corwin's application and moved for summary judgment. The district court issued a memorandum and order in September of 1997, granting the Respondent's motion for summary judgment and denying both Corwin's § 2254 application and his application for a COA. Corwin v. Johnson, No. H-97-2667 (S.D. Tex. Sept. 18, 1997). Corwin filed a timely notice of appeal. He seeks a COA from this Court on eight

3

of the issues he raised in his petition to the district court. Before discussing the merits of this appeal, we consider the effect of the recently enacted Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996[2] on this case.

## B. Application of the AEDPA

Corwin filed his § 2254 federal habeas petition on August 13, 1997. The AEDPA was signed into law by the President on April 24, 1996. In Nobles v. Johnson, this Court held that the AEDPA's provisions apply to a habeas petition when the habeas petition was filed after the enactment of the AEDPA. 127 F.3d 409, 414 (5th Cir. 1997), cert. denied, 118 S. Ct. 1845 (1998). The AEDPA is therefore applicable in this case.

Under the AEDPA, the petitioner must obtain a Certificate of Appealability (COA) to proceed with his appeal. A COA will be issued if the movant makes a substantial showing of the denial of a constitutional right. 28 U.S.C.A. § 2253(c)(2) (Supp. 1998).

Corwin first challenges this Circuit's interpretation of the AEDPA.[3] Corwin argues that this Circuit's interpretation of the

---

[2]   Pub. L. No. 104-132, 110 Stat. 1218.

[3]   The AEDPA provides:

(d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
--
      (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

4

AEDPA's language violates the Supremacy Clause because it requires federal courts to give deference to state court decisions regarding the validity of trial practices under the United States Constitution.

In this Circuit, provided the state court conducted a full and fair adjudication of the petitioner's claims, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), and questions of fact are reviewed under § 2254(d)(2). Drinkard v. Johnson, 97 F.3d 751, 767-68 (5th Cir. 1996), cert. denied, 117 S. Ct. 1114 (1997). Under § 2254(d)(1), "an application of law to facts is unreasonable only when it can be said that reasonable jurists considering the question would be of one view that the state court ruling was incorrect." Id. at 769. "In other words, we can grant habeas relief only if a state court decision is so clearly incorrect that it would not be debatable among reasonable jurists." Id.

---

Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)

(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgement of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C.A. § 2254 (Supp. 1998).

5

Corwin argues that these interpretations of § 2254 are unconstitutional and that all state court determinations of federal constitutional issues in habeas proceedings should be subject to *de novo* review by the federal courts. Even if we agreed with this conclusion--which we do not--one panel of this Court may not overrule another panel. See United States v. Taylor, 933 F.2d 307, 313 (5th Cir. 1991). As a result, Corwin's appeal must be reviewed in accordance with this Circuit's interpretations of the AEDPA, as established in Drinkard. Drinkard, 97 F.3d at 769.

We now turn to a consideration of the issues Corwin raises in his application for a COA.

## II.

### A. Corwin's Absence from the First Day of Jury Selection

Corwin first argues that his Sixth Amendment right to the effective assistance of counsel and his Fourteenth Amendment right to a fair trial were violated because he was not physically present in the courtroom during the preliminary qualification of jurors. Corwin was absent from the initial day of jury selection, during which exemptions and excuses were considered and the venirepersons were asked to answer a questionnaire. Corwin raised this argument in his state application for habeas corpus. The state trial court[4]

---

[4]    In considering Corwin's state habeas petition, the trial court made the following findings of fact:

19.    The Court judicially knows and notices that potential jurors in Montgomery County are permitted to be excused or exempted by returning their jury summons to the clerk, indicating the type of

6

concluded that Corwin had waived any error regarding his absence from the proceeding because after he appeared for voir dire, he failed to object to the disqualification of any juror while he was absent from the courtroom.  Ex parte Daniel Lee Corwin, No. 89-05-00404-CR-(1), at 7 (Tex. D. Ct. Montgomery Cty. Mar. 10, 1997). The trial court alternately determined that Corwin's absence from the preliminary jury qualification proceeding constituted harmless error and that Corwin had no right to be at the proceeding because his presence would not have contributed to the fundamental fairness of the proceeding.  The state trial court's conclusions were summarily adopted by the Texas Court of Criminal Appeals.  Ex parte Daniel L. Corwin, No. 33570-01 (Tex. Crim. App. Apr. 23, 1997) (en banc).   The district court concluded that Corwin's failure to object to the disqualification of jurors in his absence constituted an independent and adequate state ground which procedurally barred federal review of his claim.

> If a state court decision rejecting a federal habeas petitioner's constitutional claim "rests on an adequate and independent state procedural bar, and does not fairly appear to rest primarily on federal law, we may not

---

exemption to be exercised or providing documentation for an excuse.  Said actions are routinely completed without participation by attorneys, parties, and judges in the affected cases.

20. The excuse of legally exempted jurors involves no discretion on the part of the judge or any affected party.

Ex parte Daniel Lee Corwin, No. 89-05-00404-CR-(1), at 5 (Tex. D. Ct. Montgomery Cty. Mar. 10, 1997).

7

> review the merits of the federal claim absent a showing
> of cause and prejudice for the procedural default, or a
> showing that our failure to review the claim would result
> in a complete miscarriage of justice."

Boyd v. Scott, 45 F.3d 876, 879-80 (5th Cir. 1994) (quoting Young

v. Herring, 938 F.2d 543, 546 (5th Cir. 1991)) (other citations

omitted).

Corwin challenges the district court's ruling on a number of

grounds.  Corwin first argues that because the contemporaneous

objection rule is not regularly followed in Texas, the procedural

bar fails.  See Sones v. Hargett, 61 F.3d 410, 416 (5th Cir. 1995)

(holding that the presumption that a state procedural rule may bar

review of a claim for federal habeas relief may be rebutted by the

fact that the state procedural rule is not strictly or regularly

followed).  The Supreme Court has held that "a state procedural

ground that is strictly or regularly applied evenhandedly to the

vast majority of similar claims" suffices as an adequate procedural

bar.  Amos v. Scott, 61 F.3d 333, 339 (5th Cir. 1995) (citing

Dugger v. Adams, 489 U.S. 401, 410 n.6, 109 S.Ct. 1211, 1217 n.6,

103 L.Ed.2d 435 (1989)).  This Circuit has held that the Texas

contemporaneous objection rule is strictly or regularly applied

evenhandedly to the vast majority of similar claims, and is

therefore an adequate procedural bar.  Id.  Corwin's first argument

therefore fails.

Corwin also argues that the trial court did not clearly state

that it was dismissing the issue due to a procedural default.  We

disagree.  The trial court found that Corwin had not objected to

8

being absent from the preliminary jury qualification.  In addition, regarding Corwin's absence from the proceeding, the trial court found that Corwin "failed to object to any venireperson and waived any error."  Although the trial court based its ruling on two alternative grounds, this does not detract from the court's primary holding--that Corwin's failure to object constituted a procedural default.  This argument therefore fails as well.

Corwin further contests the procedural bar by arguing that the Court of Criminal Appeals did not "expressly adopt the written findings and conclusions of the trial court, but merely held that such findings and conclusions" were supported by the record.  When the last state court decision regarding a claim summarily affirms a lower court judgment denying relief, the federal court looks to the last explained decision to determine whether it was decided primarily upon a state procedural bar.  Ylst v. Nunnemaker, 501 U.S. 797, 802-04 & n.3, 111 S.Ct. 2590, 2595-96 & n.3, 115 L.Ed.2d 706 (1991).  Corwin argues that this panel cannot look through the opinion of the Texas Court of Criminal Appeals to the trial court's conclusions because the Court of Criminal Appeals chose language different from that of a previous court to express its summary affirmance.  It is inescapable that the Court of Criminal Appeals summarily affirmed the state trial court's findings of fact and conclusions of law, which held that Corwin cannot raise this argument due to a procedural default.  Corwin's semantic distinction is meritless.

Finally, Corwin argues that because the trial court provided

9

alternative holdings, including a decision denying the claim on its merits, the procedural bar is no longer operative. See Ylst, 501 U.S. at 801, 111 S.Ct. at 2593. Corwin ignores the fact that the trial court made it clear that its merits discussion was in support of its alternative holding. It is clear in this Circuit that alternative rulings do not operate to vitiate the validity of a procedural bar that constitutes the primary holding. Rogers v. Scott, 70 F.3d 340, 342 (5th Cir. 1995), cert. denied, 517 U.S. 1235 (1996).

The Petitioner makes no arguments that would otherwise preserve his right to raise this issue in a habeas petition. In addition, the Petitioner failed to show that a federal court's unwillingness to consider the claim will result in a complete miscarriage of justice. Because Corwin has not claimed actual innocence, the "fundamental miscarriage of justice" exception is inapplicable. See Ward v. Cain, 53 F.3d 106, 108 (5th Cir. 1995) (confining the fundamental miscarriage of justice exception to instances in which "the petitioner shows, as a factual matter, that he did not commit the crime of conviction").

Not only does Corwin not argue innocence, he does not show any error. Corwin speculates that his presence may have resulted in a different jury pool, but he does not assert that the jury chosen was improper. "The defense has no constitutional right to be present at every interaction between a judge and juror." United States v. Gagnon, 470 U.S. 522, 526 (1985). The Due Process Clause guarantees a defendant "the right to be present at any stage

10

of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." Kentucky v. Stincer, 482 U.S. 730, 745 (1987). In Gagnon, the Supreme Court explained that the "presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." 470 U.S. at 526 (internal quotations omitted).

We conclude that Corwin has not made a substantial showing of deprivation of a constitutional right, and is not entitled to a COA on this issue.

### B. Excusal of Potential Juror

Corwin's second claim is that the trial court improperly excused a potential juror in violation of Witherspoon v. Illinois.[5] The trial court excused Gloria Dawn Northam was excused because she expressed a reluctance to impose the death penalty. In considering the propriety of excluding a juror, "the decisive question is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Mann v. Scott, 41 F.3d 968, 980 (5th Cir. 1994) (internal quotations and citations omitted).

Corwin argues that Northam should not have been excluded because she did not explicitly state that she would not impose the

---

[5]    391 U.S. 510, 522 (1968) (holding "that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction").

11

death penalty.[6]

---

[6]   On voir dire, Northam made the following statements:

Q.   And, then later, in response to Mr. Speers'
     questions about whether you personally could render
     a decision that might result in the death penalty,
     if I'm not mistaken, you began to say that that
     would be very difficult for you; is that true?

A.   Yes.

Q.   Then, I think I heard you say also, that in your own
     mind, you would probably change the burden of proof, in
     other words, rather than making Mr. Speers or the State
     prove its case beyond a reasonable doubt, that you, in
     your own mind, would require a heavier burden than that
     before you could answer yes to those questions?

A.   Yes.  More than reasonable.

          *  *  *

Q.   Okay.  Now, what is your feeling about that?  I'm
     just clarifying for you that that's the law as I
     anticipate it would be submitted to you.  Do you
     still have those same feelings, that you are --
     notwithstanding those instructions and that law,
     that you would apply some other standard?  Of
     course, I'm referring to what you said about having
     to be absolutely convinced, or words to that
     effect, and that you would not follow the
     reasonable doubt standard.

A.   That's what gives me a problem.  Well, I would
     really have to be very convinced.

Q.   Does that mean you would be, would have to be
     convinced beyond all doubt, or what does it mean?

A.   Beyond all doubt to myself, yes.

Q.   Well, I just want to make sure I understand whether
you're willing -- now, bear in mind it's, I would not, and the law
does not require persons who could not follow the law to be made
part of the jury.  So, that if you tell me now you couldn't follow
the law, then I wouldn't put you in the position where you had to
violate your conscience or to cause a terrible problem for the
lawyers or the county.

12

A. The law as defined, I would have to follow my own conscience, which might be in contradiction to that.

Q. You say it might be in contradiction, but if I understand you correctly, your conscience would be in contradiction because you told us, I believe, that beyond a reasonable doubt is not enough. It would have to be stronger than that?

A. Right, yes.

Q. That's what you're telling me?

A. Yes.

Q. Okay.

                    *  *  *

Q. All right, and what this all stems from, this entire discussion, is the fact that when you were asked yesterday if you personally could participate in decisions that might cause the death penalty to be imposed, as I understand you, you told us that you felt that you could not at one point?

A. Right.

Q. You felt that, whereas you didn't have a huge objection against the Capital Murder law, when it came down to you personally --

A. Right.

Q. -- as a matter of conscience, if I'm not mistaken --

A. Uh-huh.

Q. -- that you did not think you personally could do it?

A. Right.

Q. Is that how you still feel today?

A. I still feel that that's a big question with me and I cannot answer it absolutely for you, that I could

13

Northam's statements on voir dire repeatedly expressed her discomfort, if not unwillingness, to apply the appropriate legal standard for imposition of the death penalty. Instead, she expressed a conviction to apply her own higher standard of proof, in keeping with her conscience. The state trial court found that Northam would "require a higher burden of proof to answer the special issues than the law required, and would be unable to faithfully and impartially apply the law." Ex parte Daniel Lee Corwin, No. 89-05-00404-CR-(1), at 6 (Tex. D. Ct. Montgomery Cty. Mar. 10, 1997).

In Drew v. Collins, we held that where a potential juror "stated on numerous occasions during voir dire questioning that he would apply a standard higher than what he understood as the reasonable doubt standard," a trial court "could correctly determine that [the potential juror's] insistence on such a high burden of proof would substantially impair his performance as a juror." 964 F.2d 411, 417 (5th Cir. 1992). Given Northam's response to questioning in voir dire, the state trial court reasonably applied the law to the facts and federal habeas relief is not appropriate. Corwin is not entitled to a COA on this issue.

---

        indeed do that.

Q.    All right.

A.    And that's after a lot of thought that I realized that I don't know that I could.

14

## C. The Constitutionality of Texas Penal Code § 19.03(a)(7)(B)

Corwin next argues that Texas Penal Code § 19.03(a)(7)(B) is unconstitutionally vague under the Eighth and Fourteenth Amendments to the United States Constitution. This provision makes it a capital crime to murder more than one person during different criminal transactions, where the murders are committed pursuant to the same scheme or course of conduct. TEX. PENAL CODE ANN. § 19.03(a)(7)(B) (West 1994).

The Texas Court of Criminal Appeals addressed this question in Corwin's direct appeal. The Court of Criminal Appeals rejected the idea that the statute "is indefinite simply because it fails to specify that the different transactions during which one or more person [sic] are killed must occur over a definite period of time or in a definite location." Corwin v. State, 870 S.W.2d 23, 27 (Tex. Crim. App. 1993).

In Anderson v. Collins, this Court considered the constitutionality of a related section of the Texas Penal Code's capital sentencing provisions--§ 19.03(a)(2)--which makes it a capital crime to commit a murder "in the course of committing" enumerated felonies. 18 F.3d 1208 (5th Cir. 1994). After considering Supreme Court precedent, this Court found that "'in the course of committing . . . robbery' is grounded in the objective proof of the particular case; it does not appeal to the sensibilities of the jurors or invite imposition of a subjective standard." Id. at 1222. This Court further found that "both the nature of the phrase and the practice of Texas courts prevent the

15

jury from being given unbridled discretion." Id. The panel distinguished the provision's language from impermissibly vague phrases such as "outrageously or wantonly vile, horrible or inhuman." Id. Although the Anderson panel admitted that there was room for uncertainty with respect to the temporal proximity or the factual connection between the crimes associated according to the statutory language, it concluded that the Texas Court of Criminal Appeals had adequately narrowed such discretion in its interpretation and construction of the language. Id. at 1222-23.

Similarly in this case, the sentencing provision itself--killing more than one person during different criminal transactions where the murders are committed pursuant to the same scheme or course of conduct--is much more specific than language previously rejected by the Supreme Court--"outrageously or wantonly vile, horrible or inhuman." See Godfrey v. Georgia, 446 U.S. 420, 432 (1980). The language of § 19.03(a)(7)(B) operates like an element of the substantive offense. In addition, the Texas Court of Criminal Appeals' interpretation and construction of the provision is sufficiently narrow to eliminate the possibility of unconstitutional applications. See Corwin, 870 S.W.2d at 27-29.

The Supreme Court has held that "[f]or purposes of vagueness analysis, . . . in examining the propositional content of a factor, our concern is that the factor have some 'common-sense core of meaning . . . that criminal juries should be capable of understanding.'" Tuilaepa v. California, 512 U.S. 967, 975 (1994) (citing Jurek v. Texas, 428 U.S. 262, 279 (1979) (White, J.,

16

concurring)).  We are satisfied that § 19.03(a)(7)(B) has such a common-sense core of meaning that juries are able to comprehend. Corwin is not entitled to a COA on this issue because he has not made a substantial showing that the decision on the merits by the state appellate court is "contrary to clearly established federal law, as determined by the Supreme Court."  Carter v. Johnson, 110 F.3d 1098, 1103 (5th Cir. 1997), vacated in part on other grounds, 118 S. Ct. 409 (1997).

Relatedly, Corwin argues that due to the vagueness of the statutory sentencing language, the evidence is insufficient to show that he committed serial capital murder as defined by the statute. Corwin concedes that the evidence is sufficient to support a finding that he killed three women in the manner described by the Texas Court of Criminal Appeals, but argues that the evidence cannot be sufficient in light of the unconstitutional vagueness of the statutory language.  Because we have already rejected Corwin's vagueness argument, that assertion alone cannot support his insufficiency of the evidence argument.  Corwin's application for a COA on this issue is denied.

### D. Introduction of the Painting and the Prosecution's Allegedly Prejudicial Statements

Finally, Corwin argues that the introduction of a painting by Corwin and the Prosecutor's accompanying statements deprived him of his constitutional rights to a fair trial and due process of law. Corwin painted a vivid tempera-on-butcher paper painting, which is six feet tall, at the request of a vocational instructor who worked

17

at the prison.  The instructor requested the picture as a Halloween decoration, and he displayed it on his door.  The painting depicts a serpentine body with a human torso.  The figure's grotesque face has fangs and its ears are composed of snake-like fangs and fish fins.  One hand of the figure holds a bloody axe and the other holds a detached scalp.  Near the serpent figure is a severed bloody arm.[7]

The prosecution introduced the painting as evidence of Corwin's future dangerousness.  The State argued:

> . . . Presented the, what I call the self portrait.  A real indication . . . I submit to you this shows what [Corwin] comes up when he's asked to create something on his own devices.  Not following or copying some model. He comes up with a monster.  That creature lives within [Corwin].  We don't have any way available to us to exorcise [sic] that demon from within [Corwin].  But we certainly have a way, and you have a way, by answering yes and yes to those special issues of exorcising [sic] [Corwin] from our society.  I submit that's what you should do.

Corwin did not object to the Prosecutor's statements at the time they were made.  The Texas Court of Criminal Appeals concluded that the painting was relevant to the second special issue--whether Corwin was a continuing threat to society.  Other members of the Texas Court of Criminal Appeals concurred in the opinion, concluding that the admission of the painting was in error, but constituted harmless error.

On habeas review, the trial court concluded that the admission of the painting was proper.  The trial court held in the

---

[7]    The painting is reprinted at Corwin v. State, 870 S.W.2d 23, 40 (Tex. Crim. App. 1993) (en banc).

alternative that its admission was harmless beyond a reasonable doubt.

We need not decide whether admission of the painting was error. Assuming without deciding that it was error to admit the painting, we agree with the district court that the error was harmless. Corwin is not entitled to federal habeas relief due to trial error unless "the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637, 637-38 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). The evidence against Corwin was overwhelming. As profiled above, the jury heard strong evidence that Corwin killed three different women in a brutal, gruesome manner. In light of the extensive and convincing evidence of his guilt, we conclude that the introduction of the painting, even coupled with the Prosecutor's statements, did not have a "substantial and injurious effect or influence in determining the jury's verdict." Because Corwin has not made a substantial showing of the denial of a constitutional right, he is not entitled to a COA on this issue.

### E. The Prosecutor's Statement Referring to the Potential of Additional Undiscovered Victims

In his closing argument, the Prosecutor stated: "I think you can reasonably assume from the evidence that there are more dead women out there that we just haven't found out about." At Corwin's objection, the trial court ordered the jury to disregard the comment. Corwin claims that the Prosecutor's remark was so

19

prejudicial that it was incapable of being cured by an instruction. The Texas Court of Criminal Appeals concluded on direct appeal that the instruction was adequate to cure the error.

As noted above, the evidence of Corwin's multiple crimes was overwhelming. Given this evidence and the presumption that jurors follow their instructions, the Texas Court of Criminal Appeals reasonably applied the law to the facts and federal habeas relief is not appropriate. See Green v. Johnson, 116 F.3d 1115, 1119-20 (5th Cir. 1997). Corwin is not entitled to a COA on this issue.

## F. Collective Prejudice of Errors that are Individually Harmless

Finally, Corwin argues that even if they don't individually constitute a substantial showing of deprivation of a substantial constitutional right, the introduction of the painting, the accompanying statements by the prosecution, and the statement regarding the potential of additional victims collectively make a substantial showing that he was deprived of a fundamentally fair trial. Although there may be cases in which a collection of errors are individually harmless but collectively deprive the defendant of a fair trial, this is not such a case. Corwin fails to demonstrate how these errors combine to rise to the level of a substantial showing of the denial of a constitutional right. Corwin is not entitled to a COA on this ground.

## CONCLUSION

For reasons discussed above, we deny Corwin's application for a COA and vacate the stay of execution granted by this Court.

20