# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

## No. 99-10054
_____

**JAMES EDWARD CLAYTON,**

**Petitioner-Appellant,**

**versus**

**GARY JOHNSON, Director, Texas
Department of Criminal Justice,
Institutional Division,**

**Respondent-Appellee.**

_____

### Appeal from the United States District Court
### for the Northern District of Texas
### (1:98-CV-201)
_____

October 1, 1999

Before KING, Chief Judge, HIGGINBOTHAM and BARKSDALE, Circuit
Judges.

PER CURIAM:[*]

James Edward Clayton, sentenced to death for capital murder,
requests a certificate of appealability (COA) from denial of his
habeas application. **DENIED.**

### I.

The Texas Court of Criminal Appeals affirmed Clayton's 1988
conviction and death sentence for the 1987 murder of Lori Barrett,
which, _inter alia_, included kidnaping. **Clayton v. State**, No.
70,764 (Tex. Crim. App. Jan. 27, 1993) (unpublished). The Supreme

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Court of the United States denied certiorari. **_Clayton v. Texas_**, 510 U.S. 853 (1993).

In December 1997, the trial court entered findings of fact and conclusions of law, recommending that state habeas relief be denied; the Court of Criminal Appeals denied relief in January 1998, holding that the findings and conclusions were supported by the record.

Clayton sought federal habeas relief that September. The district court denied it and a COA.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-32, 110 Stat. 1214 (AEDPA) applies, because Clayton filed his federal habeas petition subsequent to its enactment, *see* **_Green v. Johnson_**, 116 F.3d 1115, 1119-20 (5th Cir. 1997). Accordingly, the district court having denied a COA, Clayton must obtain it from our court. 28 U.S.C. § 2253(c)(1)(A).

A COA requires "a substantial showing of the denial of a constitutional right", 28 U.S.C. § 2253(c)(2): "the applicant [must] 'demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further'". **_Drinkard v. Johnson_**, 97 F.3d 751, 755 (5th Cir. 1996) (emphasis in original; quoting **_Barefoot v. Estelle_**, 463 U.S. 880, 893 n.4 (1983)), *cert. denied*, 520 U.S. 1107 (1997), *overruled in part on other grounds*, **_Lindh v. Murphy_**, 521 U.S. 320 (1997).

For a state prisoner, such as Clayton, habeas relief may *not* be granted under AEDPA

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[P]ure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), and questions of fact are reviewed under § 2254(d)(2)". ***Corwin v. Johnson***, 150 F.3d 467, 471 (5th Cir.), *cert. denied*, ___ U.S. ___, 119 S. Ct. 613 (1998). As noted, and pursuant to § 2254(d)(1), in reviewing a question of law, we defer to the state court's ruling, unless its "decision rested on a legal determination that was contrary to ... clearly established federal law as determined by the Supreme Court". *See* ***Lockhart v. Johnson***, 104 F.3d 54, 57 (5th Cir.) (internal quotation marks and citation omitted), *cert. denied*, 521 U.S. 1123 (1997). Likewise, we "will not disturb a state court's application of law to facts unless the state court's conclusions involved an 'unreasonable application' of clearly established federal law as determined by the Supreme Court". ***Davis v. Johnson***, 158 F.3d 806, 812 (5th Cir. 1998) (quoting 28 U.S.C. § 2254(d)(1)), *cert. denied*, ___ U.S. ___, 119 S. Ct. 1474 (1999); ***Lockhart***, 104 F.3d at 57.

- 3 -

Such "application of federal law is unreasonable only when reasonable jurists considering the question would be of one view that the state court ruling was incorrect". *Davis*, 158 F.3d at 812 (internal quotation marks and citation omitted). And, for § 2254(d)(2) (unreasonable determination of facts *vel non*), state court factual findings are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Davis*, 158 F.3d at 812.

Clayton contests applying these AEDPA standards of review. In any event, he claims COA entitlement on each of the following bases: (1) his rights under *Ake v. Oklahoma*, 470 U.S. 68 (1985), were violated, based on his assertions (a) that his court-appointed pathology expert was incompetent and (b) that his court-appointed psychiatric expert, Dr. Griffith, testified against him at the punishment phase on future dangerousness; (2) the State failed to present sufficient venue evidence; (3) prosecutorial misconduct deprived him of a fair trial; (4) the State knowingly concealed exculpatory evidence; (5) his Fourth Amendment rights were violated; and, (6) contrary to *Estelle v. Smith*, 451 U.S. 454 (1981), he was *not* warned that the results of psychiatric examinations could be used against him at the punishment phase.

A.

In rejecting AEDPA's standards of review, Clayton asserts that his claims were not "adjudicated" by the state courts. For those claims raised on direct appeal, he maintains that the factual basis for the Court of Criminal Appeals' decision was incorrect, and that

- 4 -

it cited facts not in the record. For those claims raised for state habeas, he maintains that the result was unreliable, asserting that the state courts failed to follow applicable procedures, including denying him discovery, investigative assistance, and an evidentiary hearing, and adopting the State's proposed findings and conclusions, without giving him an opportunity to challenge them.

In determining whether a state court's habeas disposition is on the merits, we consider the following factors:

> (1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state courts' opinions suggest reliance upon procedural grounds rather than a determination on the merits.

*Mercadel v. Cain*, 179 F.3d 271, 274 (5th Cir. 1999) (quoting *Green v. Johnson*, 116 F.3d at 1121).

The merits of Clayton's claims regarding Dr. Griffith's testimony, venue, and the Fourth Amendment were adjudicated on direct appeal. For habeas, although the state trial court concluded that, therefore, those claims should not be relitigated in post-conviction proceedings, it nevertheless addressed them on the merits.

Likewise, with respect to the remaining habeas claims (incompetent pathology expert, prosecutorial misconduct, concealment of exculpatory evidence, and lack of warnings by the psychiatrists), the trial court concluded that those issues "should not be considered" because they could have been, but were *not*,

raised on direct appeal. But, it also addressed them on the merits.

Accordingly, we conclude that AEDPA's standards of review are applicable to the state courts' merits determinations. Based on our review of the record and the briefs, Clayton's procedural complaints concerning the state courts do *not* alter this conclusion.

B.

In **Ake v. Oklahoma**, 470 U.S. 68, the Supreme Court discussed situations in which a criminal defendant is entitled to the appointment of a competent psychiatric expert to conduct an appropriate examination and to assist in evaluation, preparation, and presentation of the defense. Clayton maintains that his **Ake** rights were violated in two ways: his court-appointed pathologist was incompetent; and his court-appointed psychiatrist testified against him at the punishment phase.

1.

Dr. Erdmann was Clayton's court-appointed pathology expert at trial (cause and site of death). Relying on evidence discovered in the ten years since trial, including that Dr. Erdmann falsified autopsy reports, lied about his credentials and background, and was convicted of tampering with evidence during his tenure as a medical examiner, Clayton contends that Dr. Erdmann was *not* competent to assist him.

Clayton did *not* raise this issue on direct appeal. In the state habeas proceeding, the trial court found that there was *no*

- 6 -

reason to doubt Dr. Erdmann's qualifications at the time of Clayton's trial; that his assistance was beneficial to Clayton; and that Clayton had *not* shown that Dr. Erdmann's involvement was harmful.

Assuming both that *Ake* applies not only to psychiatrists, but also to pathology experts, *see Yohey v. Collins*, 985 F.2d 222, 227 (5th Cir. 1993) ("non-psychiatric experts ... should be provided only if the evidence is 'both "critical" to the conviction and subject to varying expert opinion'") (quoting *Scott v. Louisiana*, 934 F.2d 631, 633 (5th Cir. 1991)), and that it can be applied to this habeas claim, *see Teague v. Lane*, 489 U.S. 288 (1989), Clayton does *not* explain how *Dr. Erdmann's misconduct subsequent to that trial* had any bearing on *his performance at that trial*. Nor does Clayton cite any specific instance in which Dr. Erdmann's assistance to him was incompetent or how any claimed incompetence was harmful. *See Fuller v. Johnson*, 114 F.3d 491, 496-97 (5th Cir.), *cert. denied*, ___ U.S. ___, 118 S. Ct. 399 (1997); *Boyle v. Johnson*, 93 F.3d 180, 186 (5th Cir. 1996), *cert. denied*, 519 U.S. 1120 (1997).

Because Clayton has *not* made a substantial showing of the denial of a constitutional right, his COA request on this claim fails.

2.

Clayton contends that Dr. Griffith, a forensic psychiatrist, was appointed as a defense expert, but testified as a witness for the State at the punishment phase, in violation of his due process

rights under **Ake**. **Ake** holds that, "in the context of a capital sentencing proceeding, when the State presents psychiatric evidence of the defendant's future dangerousness ...[,] due process requires [that the defendant be provided with] access to a psychiatric examination on relevant issues, to the testimony of the psychiatrist, and to assistance in preparation at the sentencing phase". 470 U.S. at 84.

On 22 February 1988, prior to trial, the State moved for a psychiatric examination of Clayton regarding future dangerousness. At a hearing on 1 March, Clayton's counsel requested appointment of a *separate psychiatric expert for the defense*. On 11 March, the trial court appointed Dr. Grigson, who reported to the court on 1 April that Clayton was a severe sociopath and that there was a probability that he would commit criminal acts of violence in the future.

That July, the court entered an order, upon "motion of the Defendant", appointing Dr. Griffith to examine Clayton and report to the court on Clayton's mental competency to stand trial and his sanity at the time of the offense. The court further ordered, "at the Defendant's request", that Dr. Griffith report to the court on Clayton's future dangerousness.

At the punishment phase, after it had presented the testimony of Dr. Grigson on future dangerousness, the State called Dr. Griffith as a witness. Clayton made a narrow objection, asserting *only* that Dr. Griffith was an agent of the defense and had consulted with Clayton and his counsel; and that allowing him to

testify would violate the attorney-client privilege. (In short, Clayton's counsel did *not* object that Clayton was being deprived of his rights under *Ake*.) The State countered that Dr. Griffith was *not* an agent of the defense; and that the attorney-client privilege was *not* applicable.

Although it overruled the objection, the court ruled that Dr. Griffith would *not* be allowed to testify about conversations with Clayton or his counsel. In response to a hypothetical question based on the facts of Clayton's case (*not* objected-to as to form), Dr. Griffith testified that the hypothetical individual probably would commit acts of violence in the future. Next, Dr. Griffith was examined by Clayton's counsel regarding the prospects for rehabilitation of such a hypothetical individual.

The Court of Criminal Appeals rejected this claim on direct appeal, holding that Dr. Griffith was not a defense expert; that instead, he was an appointed psychiatrist for the court. *Clayton v. State*, slip op. at 26-27. The court stated further that he did not testify regarding communications with Clayton or his counsel, or *Clayton*'s future dangerousness, but responded instead to a hypothetical, albeit one based on the facts of this case. *Id*. at 27.

Likewise, in the state habeas proceeding, the trial court found that Dr. Griffith was *not* appointed as an expert witness for Clayton. It concluded, *inter alia*, that he testified only by response to hypothetical questions; and that his testimony did not violate the attorney-client privilege because he did *not* disclose

confidences or information gleaned from his examination of Clayton.

Clayton fails, especially in the light of his narrow objection at trial, to articulate, much less demonstrate, how his rights under *Ake* were violated. In any event, he is *not* entitled to a COA on this issue: he has *not* demonstrated by clear and convincing evidence that the state courts erred by finding that Dr. Griffith was *not* a defense expert; and he has *not* made a substantial showing that the state courts' legal conclusions were contrary to, or involved an unreasonable application of, federal law.

## C.

Clayton asserts that the State presented *no* evidence that venue was proper in Taylor County, Texas, where Clayton and the victim had resided in close proximity; that, instead, it was proper in Jones County, where the victim's body was found; and that, therefore, his Sixth and Fourteenth Amendments rights were violated.

This claim was rejected on direct appeal, on the basis that sufficient evidence supported the jury's finding that the crime, or some portion of it, occurred in Taylor County (again, where the victim and Clayton resided). *Clayton v. State*, Slip Op. at 5-8. The state habeas court also rejected the claim, finding that some of the elements of the offense (burglary, robbery, and kidnaping) occurred there.

Clayton has not made a substantial showing that the state courts' factual findings are unreasonable or that their legal conclusions are contrary to, or involved an unreasonable

application of, federal law. The State presented considerable evidence that at least a portion of the crime was committed in Taylor County, including a neighbor's testimony that she heard screams coming from the victim's home on the night she disappeared; the coroner's testimony that the victim was tied with electrical cords while still alive; evidence of the discovery of an electrical cord in Clayton's apartment and a curling iron missing its electrical cord in the victim's home; the discovery of an earring and a pair of shoes in the victim's home and a belt in a dumpster near Clayton's apartment, matching what the victim had worn on the night of her disappearance; the discovery in Clayton's apartment of an insurance card bearing the victim's name; and evidence of forced entry into the victim's home.

Because Clayton has *not* made a substantial showing of the denial of a constitutional right, he is *not* entitled to a COA on this issue.

D.

Clayton's claim that prosecutorial misconduct denied his right to a fair trial is premised on the fact that the first attorney appointed to represent him withdrew upon being appointed a state judge, and was subsequently employed by the district attorney's office. Because of that conflict, the trial court disqualified the district attorney's office and appointed as a *special prosecutor* Taylor County's former district attorney (who held that office at the time of Clayton's arrest), who had resigned to run for state judge. (The disqualification was later ruled to be an abuse of

discretion.  ***State ex rel. Eidson v. Edwards***, 793 S.W.2d 1 (Tex.
Crim. App. 1990).)

Clayton asserts that the special prosecutor's previous role as
district attorney, his political agenda, his use of an office in
the district attorney's offices, and his use of the services of
Clayton's former counsel's investigator to interview jurors,
"constituted a conflict of interest on the part of all parties
involved", and deprived him of a fair trial.

Clayton did *not* raise this issue on direct appeal.  For state
habeas, the trial court found that *no* prosecutorial misconduct
occurred, and concluded that Clayton was *not* harmed by any of the
challenged conduct.

Clayton has *not* rebutted the presumption of correctness of
these factual findings, and has *not* made a substantial showing that
the legal conclusions were contrary to, or involved an unreasonable
application of, federal law.  The special prosecutor's use of an
office and telephone near Clayton's former counsel, and the use of
the services of Clayton's former counsel's investigator, do not
establish an impermissible conflict.  Moreover, even assuming such
a conflict exists, Clayton has *not* shown how he was prejudiced.
*See* ***United States v. Cardenas***, 778 F.2d 1127, 1130-32 (5th Cir.
1985).

Because Clayton has *not* made a substantial showing of the
denial of a constitutional right, he is *not* entitled to a COA on
this claim.

E.

- 12 -

Clayton next claims that the trial court and prosecutors denied him access to exculpatory evidence. He gave statements to police that, on the night and morning following the victim's disappearance, someone whom he knew only as "Andy" was with him and the victim at his residence. Clayton requested any information obtained by the State in its investigation of "Andy"; the State responded that it had no exculpatory evidence.

Therefore, Clayton asked the court to review the information *in camera.* Clayton asserts that the record does not reveal whether the court did so; and that the court did *not* make such evidence part of the record on appeal.

Clayton did *not* raise this claim on direct appeal. In the state habeas proceedings, the state trial court rejected the claim, holding that the State did *not* conceal exculpatory evidence regarding "Andy"; and that evidence regarding "Andy" was turned over by the State to the court and was *not* exculpatory.

Clayton has *not* rebutted the presumption of correctness of the state court's factual findings, and has *not* made a substantial showing that its legal conclusions were contrary to, or involved an unreasonable application of, federal law. The purported evidence about "Andy" originated from *Clayton's own statements* to the police. Clayton does *not* even assert that any exculpatory evidence exists; he asserts, without explanation, that he "has reason to believe that there was more evidence regarding 'Andy' than was turned over to the defense, and possibly to the judge for inspection".

Obviously, such speculation falls far short of the required substantial showing of the denial of a constitutional right. Clayton is *not* entitled to a COA on this issue.

F.

Clayton contends that his warrantless arrest was illegal under Texas law and that, therefore, his statements to the police and all of the evidence seized from his apartment, including the murder weapon, should have been suppressed.

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial". *Stone v. Powell*, 428 U.S. 465, 494 (1976). Clayton does *not* claim, nor does the record reflect, that he did *not* have a full and fair opportunity in state court to litigate this Fourth Amendment claim.

Accordingly, Clayton is *not* entitled to a COA on this claim because he has *not* made the requisite substantial showing of the denial of a constitutional right.

G.

Clayton was examined pre-trial by the two earlier-described psychiatrists, Drs. Grigson and Griffith. At the punishment phase, Dr. Grigson testified that he was absolutely certain that Clayton would be involved in future criminal acts that would present a threat to society. And, as discussed, Dr. Griffith testified, in

- 14 -

response to the hypothetical question, that, in the future, the hypothetical individual probably would commit acts of violence.

A criminal defendant has a constitutional right to be informed that statements made during a court-ordered psychiatric examination can be used against him at the punishment phase on the issue of future dangerousness. *Vanderbilt v. Collins*, 994 F.2d 189, 196-98 (5th Cir. 1993) (citing *Estelle v. Smith*, 451 U.S. 454 (1981)). Lacking such warning, "the subsequent use of the [psychiatrist's] testimony against [the defendant] for that purpose [is] a violation of his fifth amendment rights". *Id*. Clayton contends that there is "no evidence" he was so warned.

Clayton did *not* raise this claim on direct appeal. In the state habeas proceeding, the state trial court found that Clayton had *not* shown a lack of such warnings and did *not* so object at trial; and held that the claim was procedurally barred because Clayton failed to object.

Clayton has made *no* attempt to overcome this bar. *See* *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (when "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice"); *Corwin v. Johnson*, 150 F.3d at 473 (Texas'

"contemporaneous objection rule" is strictly and regularly applied to similar claims and is, therefore, an adequate procedural rule).

In any event, Clayton does *not* claim that the requisite warnings were *not* given, only that there is *no evidence* that they were. The state trial court found that Clayton had *not* demonstrated that warnings were *not* given. Clayton has *not* rebutted that finding by clear and convincing evidence.

Clayton is *not* entitled to a COA on this claim.

III.

For the foregoing reasons, Clayton's COA application is

*DENIED.*