**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 99-50392**

_____

**ROBERT EARL CARTER,**

**Petitioner-Appellant,**

**versus**

**GARY L. JOHNSON, Director,**
**Texas Department of Criminal Justice,**
**Institutional Division,**

**Respondent-Appellee.**

_____

**Appeal from the United States District Court**
**for the Western District of Texas**
**(1:98-CA-067)**

_____

November 2, 1999

Before WIENER, BARKSDALE, and STEWART, Circuit Judges.

PER CURIAM:[*]

Robert Earl Carter, sentenced to death in state court for capital murder, appeals the denial of his habeas application, the district court having granted a Certificate of Appealability (COA) on two sentencing issues: refused parole eligibility instruction; and **Allen** charge. **AFFIRMED.**

I.

Carter's 1994 conviction and death sentence for the 1992 murder of six individuals during the same criminal offense was affirmed by the Texas Court of Criminal Appeals. **Carter v. State,**

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 71,836 (Tex. Cr. App. 8 May 1996) (unpublished).  The Supreme Court of the United States denied certiorari.  ***Carter v. Texas***, 519 U.S. 1152 (1997).

Carter's October 1997 state habeas application, which raised the same issues as his direct appeal, was denied that November in an unpublished order by the Court of Criminal Appeals.  ***Ex parte Carter***, No. 35,746-01.  Accordingly, Carter sought federal habeas relief in February 1998.

Although the District Court denied relief, it granted a COA on whether the trial court erred (1) in overruling Carter's requested corrective instruction on parole eligibility; and (2) in requiring the jury, with a claimed improper "dynamite" charge, to continue deliberating whether Carter should receive the death penalty.

## II.

At issue is Carter's sentence, *not* his conviction.  The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-32, 110 Stat. 1214 (AEDPA), applies because, subsequent to its enactment, Carter filed his federal application.  *See* ***Green v. Johnson***, 116 F.3d 1115, 1119-20 (5th Cir. 1997).  Under AEDPA, a COA is required for an appeal.  28 U.S.C. § 223(c)(3).  As noted, the COA granted Carter allows review of two sentencing issues (punishment phase of trial): (1) denial of the parole eligibility instruction; and (2) an "***Allen***"/"dynamite" charge.

2

Under AEDPA, federal habeas relief is *not* available to a state prisoner

> with respect to any claim that was *adjudicated on the merits* in the State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  Therefore, "pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), and questions of fact are reviewed under § 2254(d)(2)". *Corwin v. Johnson,* 150 F.3d 467, 471 (5th Cir.), *cert. denied,* ___ U.S. ___, 119 S. Ct. 613 (1998).

As a result, for reviewing a question of law pursuant to § 2254(d)(1), we defer to the state court's ruling, unless its "decision rested on a legal determination that was contrary to ... clearly established federal law as determined by the Supreme Court".  *Lockhart v. Johnson,* 104 F.3d 54, 57 (5th Cir.) (internal quotation marks and citation omitted), *cert. denied,* 521 U.S. 1123 (1997).  Likewise, we "will not disturb a state court's application of law to facts unless the state court's conclusions involved an 'unreasonable application' of clearly established federal law as determined by the Supreme Court".  *Davis v. Johnson*, 158 F.3d 806, 812 (5th Cir. 1998) (quoting 28 U.S.C. § 2254(d)(1)), *cert. denied,* ___ U.S. ___, 119 S. Ct. 1474 (1999); *Lockhart*, 104 F.3d at 57.

Such "application of federal law is unreasonable when reasonable jurists considering the question would be of one view

4

that the state court ruling was incorrect". *Davis*, 158 F.3d at 812 (internal quotation marks and citation omitted). In this regard, Carter maintains that we should wait for the Supreme Court to decide **Williams v. Taylor,** 163 F.3d 860 (4th Cir. 1998), *cert. granted*, ___ U.S. ___, 119 S. Ct. 1355 (1999), concerning the proper interpretation of § 2254(d)(1)'s "contrary to" and "unreasonable application" provisions. But, no authority need be cited for our being bound by our precedent pending change of law or a decision by the Supreme Court. *See also* **Hughes v. Johnson**, No. 98-40171, 1999 WL 791912, at *2 (5th Cir. 5 Oct. 1999); **Corwin**, 150 F.3d at 472.

For factual issues, reviewed pursuant to § 2254(d)(2), state court findings are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see* **Davis**, 158 F.3d at 812.

A.

In claiming entitlement to the refused instruction on parole eligibility in conjunction with a life-sentence, Carter maintains that the prosecution made misleading statements about such eligibility during *voir dire*, and that this contributed to his death sentence. In support, he asserts that the prosecution made improper comments to, or failed to correct improper statements by, five potential jurors:

> (1) Vernon Harvey Jensen
>
> [JUROR]: Well, the case you've been just describing, I wouldn't have no problem with the death penalty there.
>
> [PROSECUTOR]: All Right.
>
> [JUROR]: *Because you put them in prison and in a few years they're going to [be] out on the street again.*
>
> [PROSECUTOR]: All right, sir. You understand that Texas -- that Texas is *not* one of those states that has life without parole?
>
> [JUROR]: Right. That's what I'm saying.
>
> [PROSECUTOR]: *And in other words, at some point in time every murderer that's sent to prison for life has a possibility of getting out.*
>
> (2) James Frederick Zeman
>
> [PROSECUTOR]: In the state of Texas, just to clear up so you will understand, some states have life without parole. Texas is *not* one of those states. *Texas does in fact provide for parole of anyone.* There's no guarantee that that person will be paroled. However, *considering overcrowding and considering the fact the legislature could change the law at any time* as to what the parole laws would be. *But just so you understand that a person sentenced to life can be at some point paroled out in Texas and that part of it.*

(3) Thomas Archie Whetstone

[PROSECUTOR]: One other thing that I do need to mention to you that I think is significant and that is that in Texas law if a person does receive life there is *no such thing as life without parole. There is in some states. Texas is not one of those states. So a person that receives life in a capital murder case has a possibility of getting out at some time on parole irrespective of how long it may be.* Right now there's a certain number of years. Obviously, [the] legislature can change that at any time. But with *prison overcrowding and this type of situation, [it's] something to take into consideration.*

(4) Joe Berry Townsend

[PROSECUTOR]: You understand also that Texas--the alternatives in a capital murder case are either life or death. I want you to understand that *Texas parole laws do not provide for parole -- life without parole.* Texas doesn't have that. In other words, *it is possible for anyone sentenced to life in the state of Texas to get out of prison at some point in time.* You understand that?

[JUROR]: (Nods affirmatively)

[PROSECUTOR]: You also understand that the Texas *legislature can change the parole laws at any time*?

[JUROR]: (Nods affirmatively)

[PROSECUTOR]: *In fact, the prison overcrowding gets so bad they can say we parole you out after x-number of years and that's always a possibility.* But just understand that is something that does exist.

(5) Jeanne Leigh Creagh

[JUROR]: Do we have life in prison in Texas?

[PROSECUTOR]: We have life in prison in Texas. Yes, ma'am. There are -- ... *provisions in Texas, depending on the temperature of the legislature, for parole and*

7

> *things like that.  There's not life without*
> *parole in Texas.*
>
> [JUROR]:  That's what I meant.
>
> [PROSECUTOR]:  *What parole means in Texas is*
> *best left undefined, because who knows.*

(Emphasis added.)  Carter did *not* object contemporaneously to these now-contested comments.

Normally, the failure to so object would bar Carter from prevailing on this claim in state court and on federal habeas.  *See* ***Hughes***, 1999 WL 791912, at *4.  However, the Court of Criminal Appeals reached the merits on direct appeal, holding that the prosecutor's statements were not misleading, on the basis that they were an accurate statement of Texas law.  ***Carter,*** No. 71,836, slip op. at 10.  (The court continued that, if there was error, Carter failed to preserve it, by *not* objecting contemporaneously.)  Likewise, the district court denied habeas relief on the merits and granted a COA on the merits-issue.  Therefore it is before us.

Carter's requested charge stated that,

> under the applicable law in this case, the
> defendant, if sentenced to a term of
> imprisonment, ... will not become eligible for
> parole until the actual time served ... [,]
> without consideration of good time[,] is 35
> calendar years, which is the law.

This instruction, requested during the punishment phase, was refused without reasons or the State even responding.  Concerning parole, the court did instruct as follows:

> During your deliberations, you are *not* to
> consider or discuss any possible action of the
> Board of Pardons and Paroles Division of the
> Texas Department of Criminal Justice or of the
> Governor, or how long the defendant would be

8

> required to serve to satisfy a sentence of
> life imprisonment.

(Emphasis added.)

### 1.

Carter raises several subissues about the refused instruction, such as that prosecutorial misconduct misled the jury about Carter's parole eligibility; that the prosecutor failed to correct juror misstatements about such eligibility; and that the district court misapplied Texas law in not giving a corrective instruction to correct community misunderstandings about the judicial system. But, because a COA was not granted on any of these subissues, we cannot consider them; AEDPA limits review to only those issues designated in a COA. *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997).

### 2.

To support his corrective-instruction-needed claim, Carter relies on a juror's affidavit, which states that the parole discussion at *voir dire* "may have had a bearing on our decision in favor of the death penalty". But, this affidavit was never presented to the state courts; in fact, it was *not* signed until August 1998, *after* completion of the state habeas proceeding. Obviously, "it is improper ... to rely on an affidavit that the state courts did *not* have an opportunity to review". *Livingston v. Johnson*, 107 F.3d 297, 306 n.7 (5th Cir.) (emphasis added), *cert. denied,* ___ U.S. ___, 118 S. Ct. 204 (1997); *see Hogue v. Johnson*, 131 F.3d 466, 505 (5th Cir. 1997), *cert. denied,* ___ U.S. ___, 118 S. Ct. 1297 (1998).

As noted, the Court of Criminal Appeals held, on direct appeal, that the prosecutor

> did inform [the potential jurors] that Texas law does *not* provide for a sentence of life in prison without the possibility of parole. As this is an *accurate description of the law*, appellant *cannot* show harm or that the veniremembers were misled.

*Carter,* No. 71,836, slip op. at 10 (emphasis added).

Carter maintains that the instruction's refusal conflicts with *Gardner v. Florida*, 430 U.S. 349, 362 (1977), which held that a defendant has a constitutional right to rebut information the prosecution presented to the jury. In sentencing Gardner, the trial judge reviewed a presentence report, only part of which was revealed to Gardner. The Court held that Gardner was denied due process, because he was sentenced, at least in part, on the basis of information he had no opportunity to rebut. *Gardner*, 430 U.S. at 363.

Carter's situation is different. As discussed, he had the opportunity at *voir dire* to rebut the prosecutor's statements on parole eligibility. In fact, Carter questioned a prospective juror as follows:

> [COUNSEL FOR CARTER]: ... just to follow up on what [the prosecutor] said [concerning, if sentenced to life, Carter will be paroled].
>
> I disagree with his interpretation there. I don't believe that there is necessarily a reasonable expectation that that person will be released. That person could be released after a length – well, in capital murder 35 years, but he does not have to be released.

Do you understand that?

Accordingly, because Carter had such opportunity and exercised it with some, but not all prospective jurors, *Gardner* does not apply.

Carter also claims that *Simmons v. South Carolina,* 512 U.S. 154 (1994), requires the requested instruction. In *Simmons*, the prosecution maintained that Simmons would be a future danger to society. However, Simmons was ineligible for parole if convicted, and, therefore, could *not* be a future danger. Simmons' request that the jury be informed of his parole ineligibility was denied. The Supreme Court remanded for resentencing, because the jury had been misled about parole eligibility.

Again, Carter's situation is different. Because he *would be eligible for parole if sentenced to life*, the jury was *not* misled about such eligibility; and, as discussed, he had the opportunity to rebut the challenged statements. The Court of Criminal Appeals ruled, on direct appeal, that *Simmons* was inapplicable, on the basis that life without parole was *not* a sentencing option; that, therefore, Carter was *not* entitled to the requested instruction. *Carter*, No. 71,836, slip op. at 9-10; *see Smith v. State*, 898 S.W.2d 838 (Tex. Cr. App.), *cert. denied,* 516 U.S. 843 (1995). (Our court has also interpreted *Simmons* to apply *only when life without parole is a sentencing option*. *See Hughes*, 1999 WL 791912, at *7-8; *Allridge v. Scott,* 41 F.3d 213, 222 (5th Cir. 1994).)

Accordingly, pursuant to § 2254(d)(1), the state court decision did *not* conflict with "clearly established Federal law, as

11

determined by the Supreme Court of the United States".  As a result, habeas relief *cannot* be granted on this issue.

## B.

The other COA issue concerns the supplemental instruction at the punishment phase.  It was given after the jury announced that it had reached a verdict and returned the verdict form to the court.  Only one of the three death penalty special issues — No. 2 — had been answered.  (Carter does *not* contest No. 2 — that he actually murdered six persons.)

The court had instructed for No. 1 (future dangerousness):

> You are instructed that you may *not* answer Special Issue No. 1 "Yes" unless all jurors agree to such an answer.  Further, the jury may *not* answer ... "No" unless ten (10) or more jurors agree.
> ...
>
> *In the event the jury is unable to agree upon an answer to Special Issue No. 1 under the conditions and instructions outlined above, the Foreman will not sign either form of answer to the Special Issue.*

(Emphasis added.)  And, it had instructed that No. 3 (mitigating circumstances) did *not* have to be answered unless Nos. 1 and 2 were answered "yes".

To impose a death sentence, Nos. 1 and 2 had to be answered "yes" and No. 3 "no".  As noted, after deliberating for two and one-half hours, the jury announced that it had reached a verdict.  On the verdict form, the signature lines for all of the possible answers for Nos. 1 and 3 were blank; the "Yes" answer for No. 2 was signed by the jury foreman.

12

After the verdict form was delivered to the court, the trial judge ordered counsel to approach the bench and an unrecorded bench conference was held. The judge then stated: "Members of the jury, you have been working hard, but I'm sorry, you have not completed your job. I'm going to ask you to go back and continue your deliberation". Carter objected; he contended, based on the instructions to leave a special issue blank and unsigned if a verdict could *not* be reached on it, that the verdict form *was sufficient* and resulted in a life-sentence. (Carter's objection that the first verdict form was complete and, therefore, resulted in life imprisonment is *not* an issue for which a COA was granted. Again, we *cannot* review it. *See* **Lackey,** 116 F.3d at 151.)

After the supplemental charge, the jury deliberated for an additional 90 minutes and returned a death-sentence. Carter requested that the jury be polled; each juror responded that this was his or her verdict.

On direct appeal, the Court of Criminal Appeals decided the issue on the merits, holding that the supplemental charge was proper. **Carter**, No. 71836, slip op. at 14-16. As discussed, habeas relief can be granted on this issue *only if*, pursuant to § 2254(d)(1), that decision "was contrary to ... clearly established Federal law as determined by the Supreme Court of the United States".

As Carter notes, such supplemental charges have long been sanctioned. *See, e.g.,* **Lowenfield v. Phelps,** 484 U.S. 231, 239 (1988); **Allen v. United States**, 164 U.S. 492 (1896). Therefore,

13

Carter had to demonstrate to the Court of Criminal Appeals that the "charge, under the totality of the circumstances, was *so coercive* as to have unconstitutionally rendered the ... trial fundamentally unfair". **Montoya v. Scott**, 65 F.3d 405, 409 (5th Cir. 1995) (emphasis added). "[W]e evaluate the constitutionality of a state court's supplemental instructions by comparing them to other charges challenged on constitutional grounds in habeas corpus cases". **Id.** at 409.

This instruction avoided the most troubling "feature of an **Allen** charge [—] the exhortation to the minority to reexamine its views in the light of the majority's arguments". **United States v. Cheramie**, 520 F.2d 325, 330-31 (5th Cir. 1975) (emphasis added). The supplemental instruction at issue in **Boyd v. Scott**, 45 F.3d 876, 878 (5th Cir. 1994) (emphasis in original), stated that "a *decision has to be reached by a jury. You are that jury*, and it seems to me that you ought to make every effort to arrive at a unanimous verdict and to reach a conclusion". Our court held that this instruction was *not* constitutionally unfair.

As noted, in the light of the circumstances, the Court of Criminal Appeals held that the challenged instruction (" ... I'm sorry, you have not completed your job. I'm going to ask you to go back and continue your deliberation."), given after only two and one-half hours of deliberation, did *not* coerce the jury into a verdict. This decision did *not* conflict with the clearly established federal law, discussed *supra*. Therefore, habeas relief *cannot* be granted on this issue.

14

III.

For the foregoing reasons, the denial of habeas relief is

***AFFIRMED.***