UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-11260
_____


JEFFREY DILLINGHAM,

                                        Petitioner-Appellant,

                        versus

GARY L. JOHNSON, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

                                        Respondent-Appellee.

_____

Appeal from the United States District Court for the
            Northern District of Texas
                 (4:98-CV-480)
_____

April 18, 2000

Before JOLLY, JONES, and BENAVIDES, Circuit Judges.

PER CURIAM:[1]

     Petitioner Jeffrey Dillingham (Dillingham), convicted of
capital murder in Texas and sentenced to death, appeals from the
district court's order denying federal habeas relief.  The sole
issue he raises on appeal is that the district court erred in
determining  the state trial court's refusal to instruct the jury

_____

     [1]  Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

that a life sentence for capital murder would require Dillingham to serve 35 calendar years before becoming eligible for parole constituted a deprivation of due process under the Fourteenth Amendment.[2]  Finding that we are bound by our precedent, we AFFIRM.

I.    BACKGROUND

In 1983, a jury convicted Dillingham of the capital offense of murdering Caren Koslow for remuneration and the promise of remuneration pursuant to § 19.03(a)(3) of the Texas Penal Code. After a punishment hearing, a jury answered the three special sentencing issues such that the trial court assessed Dillingham's punishment at death.[3]

---

[2]  The district court issued a certificate of appealability only with respect to this claim.

[3]  The following questions were submitted pursuant to article 37.071(b) and (e) of the Texas Code of Criminal Procedure:

> Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society?
>
> Do you find from the evidence beyond a reasonable doubt that the defendant actually caused the death of Caren Koslow or did not actually cause the death of Caren Koslow but intended to kill Caren Koslow or another or anticipated that a human life would be taken?
>
> Taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, do you find that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

On February 14, 1996, in an unpublished opinion, the Texas Court of Criminal Appeals affirmed Dillingham's conviction and sentence of death. *Dillingham v. State,* No. 71,778 (Tex.Crim.App.), *cert. denied,* 117 S.Ct. 204 (1996). Dillingham subsequently filed a state application for writ of habeas corpus. The trial court entered findings of fact and conclusions of law recommending that his application be denied. The Texas Court of Criminal Appeals, in an unpublished order, denied relief based on its own review and the findings of the trial court. *Ex parte Dillingham,* No. 36,789-01 (Tex.Crim.App.), *cert. denied,* 119 S.Ct. 343 (1998).

On August 31, 1998, Dillingham, through appointed counsel, filed a petition for writ of habeas corpus in federal district court. The respondent filed an answer and motion for summary judgment. The magistrate judge issued findings and conclusions, recommending that relief be denied. The district court adopted the findings, conclusion, and recommendation denying relief on September 29, 1999. Dillingham filed his notice of appeal and moved for a certificate of appealability (COA). The district court granted a COA as to the contention that the state trial court's refusal to instruct the jury that a life sentence for capital murder would require Dillingham to serve 35 calendar years before becoming eligible for parole constituted a deprivation of due process under the Fourteenth Amendment.

---

The jury answered the first two questions "yes" and the third question "no."

II.  ANALYSIS

    A.  STANDARD OF REVIEW

Dillingham filed his section 2254 application for habeas relief on July 7, 1998, which was after the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA).  Therefore, his application is subject to the AEDPA. *Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997).  Under the AEDPA, a petitioner must obtain a COA.  28 U.S.C. § 2253(c)(2).  As set forth above, the district court granted Dillingham a COA with respect to the issue he now raises on appeal.

The state court adjudicated Dillingham's instant claim on the merits.  Accordingly, we cannot grant habeas relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

Dillingham's claim is purely legal--there are no facts in dispute.  We review pure questions of law under § 2254(d)(1). *Drinkard v. Johnson*, 97 F.3d 751, 767-68 (5th Cir. 1996).  Under § 2254(d)(1), "an application of law to facts is *unreasonable* only when it can be said that reasonable jurists considering the question would be of one view that the state court ruling was incorrect." *Drinkard*, 97 F.3d at 769.  Thus, this court "can grant habeas relief only if a state court decision is so clearly incorrect that it would not be debatable among reasonable jurists."

*Id.*

## B. REFUSAL TO INSTRUCT ON PAROLE ELIGIBILITY

Dillingham argues that his due process rights under the Fourteenth Amendment were violated by the trial court's refusal to inform the jury in the punishment charge that he would not be eligible for parole for 35 calendar years. More specifically, relying on *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187 (1994), he contends that "the jury never had the opportunity to consider what effect, if any, parole would have had on their particularized assessment of the petitioner's future dangerousness." (emphasis deleted).

In *Simmons,* the Supreme Court held that if the defendant's future dangerousness is at issue and state law prohibits the defendant's release on parole, due process demands that the sentencing jury be informed the defendant is ineligible for parole. 512 U.S. at 156, 114 S.Ct. at 2190. Although Dillingham acknowledges that Texas law does not require defendants convicted of capital murder to serve life without parole, he asserts that it is a distinction without a difference.

We have explained that *Simmons* requires a jury be informed about a defendant's parole ineligibility only when (1) the state argues that a defendant represents a future danger to society, and (2) the defendant is legally ineligible for parole. *Allridge v. Scott*, 41 F.3d 213, 222 (5th Cir. 1994).[4] Because Dillingham would

---

[4] While recognizing our holding in *Allridge*, Dillingham nevertheless asserts that it rested, at least in part, on faulty reasoning. He points to our statement that Texas had chosen to

5

have been eligible for parole if sentenced to life imprisonment, our precedent precludes this claim.

Finally, although Dillingham's direct appeal became final after *Simmons,* we have explained that "an extension of *Simmons* to encompass situations in which a defendant was eligible for parole would be barred under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060

(1989)." *See Montoya v. Scott,* 65 F.3d 405, 416 (5th Cir. 1995).[5]

---

keep evidence or instruction of parole eligibility from juries. *Id.* (citing *Rose v. State,* 752 S.W.2d 529, 534-35 (Tex.Crim.App. 1987)). He asserts that this analysis ignored the opinion in *Oakley v. State,* 830 S.W.2d 107 (Tex.Crim.App. 1992), in which the Court of Criminal Appeals upheld the reenactment of a statute that required juries to be instructed regarding parole eligibility in certain noncapital cases because it had been authorized by an amendment to the Texas Constitution. In a footnote, Dillingham also states that the Texas legislature has now amended the capital sentencing statute to allow juries to be informed of parole eligibility with respect to a life sentence.

We find this criticism to be ill-founded for three reasons. First, the Court of Criminal Appeals made clear that their decision in *Oakley* was not based on a federal constitutional claim, but instead involved only the Texas Constitution. 830 S.W.2d at 108 n.1. *Simmons* is, of course, based upon the Due Process Clause of the Fourteenth Amendment, and federal habeas proceedings are limited to claims involving the United States Constitution.

Second, although the Texas legislature has decided to allow capital juries to be informed regarding parole eligibility, that provision became effective September 1, 1999, several years after Dillingham's conviction became final. In other words, Texas has not afforded this right to Dillingham.

Third and most important, one panel of this Court may not overrule another absent an intervening decision to the contrary by the Supreme Court or this Court en banc. *See Hogue v. Johnson*, 131 F.3d 466, 491 (5th Cir. 1997). Thus, *Allridge* controls and precludes relief for Dillingham.

[5] We note that Dillingham cites to an opinion written by Justice Stevens (and joined by three other Justices) respecting the denial of the petition for a writ of certiorari in *Brown v. Texas,* 118 S.Ct. 354 (1997). Justice Stevens stated that "[t]here is obvious tension between this rule and our basic holding in *[Simmons]."* Of course, that opinion did not constitute a decision

6

AFFIRMED.

_____

on the merits.  Indeed, even if the Supreme Court now granted
certiorari in such a case, we would be bound by our precedent.
*Martin v. Cain,* 2000 WL 257182, at *3 (5th Cir. March 8, 2000).